591 So.2d 167 (1991)
Gary Leonard TILLMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 74756.
Supreme Court of Florida.
October 17, 1991.
Rehearing Denied January 22, 1992.
James Marion Moorman, Public Defender and Douglas S. Connor, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
KOGAN, Justice.
Gary Leonard Tillman appeals his sentence of death for first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
This case comes before us in an unusual posture. In the proceedings below, the State entered into a plea agreement with Tillman whereby the latter conceded his *168 guilt, thus obviating the need for a guilt-phase trial. In exchange, the State agreed to restrict the kinds of evidence it otherwise could adduce during the penalty phase. Under this agreement, the State could only present evidence about two aggravating factors: (1) the factor of heinous, atrocious, or cruel; and (2) the factor that the defendant was on parole for an earlier offense at the time of the murder. During the subsequent penalty phase, the jury recommended death and the trial court concurred. However, this sentence was reversed in Tillman's initial appeal because the State breached its plea agreement. Tillman v. State, 522 So.2d 14 (Fla. 1988).
Partly as a result of this plea agreement, the Court now has a very scant record to review. The only available facts regarding the murder and Tillman's role in it may be fairly summarized in two sentences: On August 31, 1983, Marjory Shannon was discovered shortly after she had been stabbed fifty-nine times, and she later bled to death in a hospital. At the time of the murder, Tillman was on parole for a prior burglary.
At the penalty phase on remand, Tillman introduced his own case for mitigation. This included evidence that Tillman was a very young man when the murder occurred; that Tillman had a difficult childhood caused partly by the fact that he was the child of an illegal sexual act between his mother and her stepfather; that Tillman worked hard to help his family when he was a child and a teenager; that Tillman was a good father and provider to his wife and children; that Tillman suffered psychotic symptoms, delusions, and paranoia; that Tillman was under the influence of extreme mental and emotional disturbance at the time of the murder; that Tillman suffered a substantial impairment of his ability to conform his conduct to the requirements of the law at the time of the murder; and that Tillman had expressed remorse for the murder.
In the penalty phase conducted on remand, the jury recommended death by a vote of eight to four. The trial court then found that both of the aggravating factors argued by the State were present. It concluded that the mitigating factors were Tillman's young age and his close ties to his family. However, finding that the aggravating factors outweighed the mitigating factors, the trial court agreed with the jury and imposed a death sentence.
On appeal, Tillman raises five issues, only two of which need be discussed.[1] First, Tillman argues that the trial court on remand erred in not permitting him to withdraw his earlier plea agreement. Even if our prior opinion could be read as allowing withdrawal, but see Tillman, 522 So.2d at 16, we do not agree that circumstances have changed sufficiently to permit withdrawal in this instance. Moreover, we note that an integral part of the plea agreement is Tillman's concession of guilt. This is an issue Tillman cannot now challenge, since he failed to move for a withdrawal of the plea (and hence, the concession of guilt) during his first penalty phase. Accordingly, all guilt-phase issues are now res judicata, as is the validity of the plea agreement itself. See id. The agreement thus could not have been withdrawn on remand.
Second, Tillman argues that death is not a proportional penalty in this case in light of our opinion in Nibert v. State, 574 So.2d 1059 (Fla. 1990), a multiple-stabbing case in which the substantial mitigating evidence led us to conclude that death was not a proportional penalty. The State counters that death is proportional in light of Hudson v. State, 538 So.2d 829 (Fla.), cert. denied, 493 U.S. 875, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989), another stabbing *169 case in which the substantial aggravating evidence led us to the opposite conclusion.
We have described the "proportionality review" conducted by this Court in every death case as follows:
Because death is a unique punishment, it is necessary in each case to engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances.
Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990) (citation omitted) (emphasis added), cert. denied, ___ U.S. ___, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991). Accord Hudson, 538 So.2d at 831; Menendez v. State, 419 So.2d 312, 315 (Fla. 1982). The requirement that death be administered proportionately has a variety of sources in Florida law, including the Florida Constitution's express prohibition against unusual punishments.[2] Art. I, § 17, Fla. Const. It clearly is "unusual" to impose death based on facts similar to those in cases in which death previously was deemed improper. Id. Moreover, proportionality review in death cases rests at least in part on the recognition that death is a uniquely irrevocable penalty, requiring a more intensive level of judicial scrutiny or process than would lesser penalties. Art. I, § 9, Fla. Const.; Porter.
Proportionality review also arises in part by necessary implication from the mandatory, exclusive jurisdiction this Court has over death appeals. Art. V, § 3(b)(1), Fla. Const. The obvious purpose of this special grant of jurisdiction is to ensure the uniformity of death-penalty law by preventing the disagreement over controlling points of law that may arise when the district courts of appeal are the only appellate courts with mandatory appellate jurisdiction. See id. Thus, proportionality review is a unique and highly serious function of this Court, the purpose of which is to foster uniformity in death-penalty law.
Based on the foregoing, we are compelled to the conclusion that the constitutionally required proportionality review cannot possibly be conducted in this instance. The scant factual record available to us regarding this murder in no sense allows a meaningful review of "the totality of circumstances ... to compare [this case] with other capital cases." Porter, 564 So.2d at 1064. We cannot possibly determine whether death is an unusual punishment when compared with other death penalty cases, as required by the Florida Constitution, because we have almost nothing to compare. Art. I, § 17, Fla. Const.
The State's acceptance of the plea agreement has put us in a position of being completely unaware of the facts of the murder apart from the number of stab wounds the victim suffered and the fact she bled to death. We do not even know what events precipitated the murder, the physical location where it occurred, the murder's motive or purpose, or whether there was any prior relationship between Tillman and the victim. In effect, the plea agreement has deprived us of the entire factual context in which the murder occurred.
Accordingly, either Tillman or the State may be correct in asserting that this murder is more similar to the facts of Nibert on the one hand, or more like the facts of Hudson on the other hand. We simply cannot determine the issue on this record. Thus, all doubts must be resolved in favor of Tillman, since his state constitutional right is to receive a proper proportionality review to determine whether the sentence of death is unusual when compared to other similar cases. Art. I, § 9, 17, Fla. Const.; Porter. We have no choice but to vacate the death penalty and reduce it to life in prison without possibility of parole for twenty-five years. See § 775.082(1), Fla.Stat (1989).
It is so ordered.
*170 SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and HARDING, JJ., concur.
NOTES
[1] The other three issues are: (1) that the prosecutor improperly excused persons from the penalty-phase jury venire based on racial factors; (2) that the jury was not given a constitutional instruction on the factor of heinous, atrocious, or cruel; and (3) that the trial court erred in failing to find and weigh uncontroverted mitigating evidence. These issues all are rendered moot by our opinion, since all are exclusively relevant to the penalty phase. Because Tillman conceded guilt and because we find that death is not a proper penalty in this case, the only possible sentence under Florida law is life in prison without possibility of parole for twenty-five years. § 775.082(1), Fla. Stat. (1989).
[2] The Florida Constitution prohibits "cruel or unusual punishment." Art. I, § 17, Fla. Const. (emphasis added). The use of the word "or" indicates that alternatives were intended. Cherry Lake Farms, Inc. v. Love, 129 Fla. 469, 176 So. 486 (1937).