656 So.2d 448 (1995)
Victor Marcus FARR, Appellant,
v.
STATE of Florida, Appellee.
No. 82894.
Supreme Court of Florida.
May 4, 1995.
Rehearing Denied June 21, 1995.
*449 Nancy A. Daniels, Public Defender and W.C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara J. Yates, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
We have on appeal the sentence of the trial court imposing the death penalty upon Victor Marcus Farr. The facts of the case are stated in our prior opinion, in which we remanded for a new penalty phase. Farr v. State, 621 So.2d 1368 (Fla. 1993). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
This appeal again poses a question we often have faced in recent years: Whether the death penalty is "reliably" imposed in those cases in which the defendant does not oppose or actually requests death by execution. The essential facts before us today are that Farr forbade his attorney to present a case for mitigation on remand and that Farr himself took the witness stand and systematically refuted, belied, or disclaimed virtually the entire case for mitigation that existed in the earlier appeal. Appellate counsel now asks us to reject Farr's testimony as self-serving and unreliable, and he further argues that more recent opinions of this Court have modified our earlier holding in Hamblen v. State, 527 So.2d 800 (Fla. 1988).
On the first point, we find no error in the trial court's rejection of the case for mitigation. At the trial level, the defendant is entitled to control the overall objectives of counsel's argument. Hamblen. Here, Farr himself controverted the case for mitigation, which was his right. Id. It is within the trial court's discretion to reject either opinion *450 or factual evidence in mitigation where there is record support for the conclusion that it is untrustworthy. Walls v. State, 641 So.2d 381, 390 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995). That being the case here, the trial court did not err.[1]
On this second point, counsel's argument essentially is that our opinion in Klokoc v. State, 589 So.2d 219 (Fla. 1991), effected a modification of Hamblen. It is true that the Klokoc trial court exercised its own independent discretion and appointed special counsel to present a case for mitigation after Klokoc forbade his own attorney to do so. Id. at 220. However, nothing in Klokoc modified the core holding of Hamblen: that there is no constitutional requirement that such a procedure be used. While trial courts have discretion to appoint special counsel where it may be deemed necessary, there is no error in refusing to do so. Compare Klokoc with Hamblen. We thus find no error in the fact that no special counsel was appointed in this case.
It deserves emphasis, however, that the ability of a capital defendant to restrict counsel's argument is not without limit. It is true that the right to counsel embodies a right of self-determination in the face of specific criminal charges. Traylor v. State, 596 So.2d 957, 968 (Fla. 1992). At the trial level, this certainly means that "defendants have a right to control their own destinies" when facing the death penalty. Hamblen, 527 So.2d at 804 (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Nevertheless, there are countervailing interests that must be honored.
In Klokoc, for example, we addressed the problem that can arise when a death-sentenced defendant attempts to restrict the argument of appellate counsel in this Court. The Florida Constitution imposes upon the Court an absolute obligation of determining whether death is a proportionate penalty. Art. I, § 17, Fla. Const.; Tillman v. State, 591 So.2d 167, 169 (Fla. 1991). For that reason, appeals from death penalties are both automatic and mandatory, and cannot be rendered illusory for any reason. Thus, the Klokoc Court held that appellate counsel must proceed with a proper adversarial argument notwithstanding the defendant's instruction to dismiss the appeal or to acquiesce to the death penalty. Klokoc, 589 So.2d at 222.
We acknowledge that this is a troubling area of the law. On a case-by-case basis, we have attempted to achieve a solution that both honors the defendant's right of self-determination and the constitutional requirement that death be imposed reliably and proportionately. While there are no simple solutions, we do strongly believe that trial courts would be wise to order presentence investigations in at least those cases in which the defendant essentially is not challenging imposition of the death penalty. Nevertheless, the failure to order one cannot be considered error in light of a defendant's refusal to seriously challenge death as a penalty.
For the foregoing reasons, the sentence of death is affirmed.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW and HARDING, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which SHAW and KOGAN, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., concurs in result only.
ANSTEAD, Justice, specially concurring.
I concur in the result reached by the majority opinion, but I would go further and adopt a uniform rule that requires a presentence investigation and report in all capital cases. Our failure to adopt such a requirement *451 is tantamount to inviting arbitrary decision-making at both the trial and appellate levels in a significant number of cases.
Informed decision-making is essential to the integrity of the judicial sentencing process. Even under the present rule, I would expect that careful judges exercise their discretion and consistently order such investigations in all capital cases. Such investigations provide a minimum, yet substantial, standard for insuring that a sentencing court is informed on all relevant considerations prior to sentencing. The investigation also helps avoid many potential post-sentencing problems such as claims of ineffective assistance of counsel in sentencing. Primarily, however, a presentence investigation enhances the ability of the trial judge, and this Court, to make reasoned and informed decisions about the propriety of the imposition of the death penalty in particular cases. Justice Hatchett made the point eloquently in 1978:
In imposing sentence in a capital case, the fundamental respect of humanity underlying the Eighth Amendment requires the trial judge to take into consideration the character and record of the defendant as well as the offense for which he was convicted. Woodson v. North Carolina, supra [428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)]. Practically speaking, at a time when state attorneys are seeking the means to pay witness fees for witnesses to travel from one county to another where there has been a change of venue, when public defenders are hard pressed to get funds for depositions, it is unrealistic to believe that a defendant facing sentence without the benefit of presentence investigation reports will be able to present to the sentencing judge out of state school reports, health records, or other favorable information regarding his character and record.
The rule as construed by the majority requires a presentence investigation report for all offenders under 18 years of age or convicted of a first felony offense, except those convicted of first degree murder. If presentence investigation reports are to be mandatory for anyone, surely they should be mandatory where one faces the ultimate penalty.

Hargrave v. State, 366 So.2d 1, 8 (Fla. 1978) (Hatchett, J., concurring in part and dissenting in part) (emphasis added), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979).
SHAW and KOGAN, JJ., concur.
KOGAN, Justice, concurring in part, dissenting in part.
I concur with the overall result because this Court's precedent and the law of the case doctrine compel the conclusion reached by the majority. In doing so, I must express my own doubts about the way Florida case law is developing with regard to capital defendants who want to die by execution. While the majority's outline of the relevant law has some appeal, it is not by any means a seamless analysis. I frankly am troubled that in a case like Klokoc, a defendant's penalty is reduced to life largely because a trial court exercised discretion to appoint special counsel to develop a case for mitigation. Yet, in cases such as this one, no special counsel was appointed and Farr's admitted determination to die in the electric chair now has resulted in this Court being wholly blinded as to whatever case for mitigation might exist.
Several years ago I wrote the opinion in Tillman, which essentially held that a death penalty must be reduced to life if the trial record is so deficient that a proper proportionality analysis cannot be achieved. I see only a slight difference between that situation and the one at hand today. While I certainly realize cases such as Farr's admit of no easy answers, I nevertheless cannot overlook the unequal imposition of death penalties that could result from the case-by-case framework this Court has developed. For all we know, Farr's true case for mitigation may be more compelling than that of Klokoc.
Justice Barkett's dissent in Hamblen made an arguable case for mandatory appointment of special counsel, yet I felt then as I still do that it has one major flaw: It would paternalistically negate the defendant's right of self-determination, recognized both in Faretta and our own opinion in Traylor v. State, 596 So.2d 957 (Fla. 1992). Yet, we perhaps did not understand that our opinion in Klokoc, *452 when issued, could achieve essentially the same paternalism during the appeal. The majority today glosses Klokoc by stating that this Court's constitutional obligations can only be honored by limiting the defendant's control over appellate counsel. To my mind, this is an analytically unsatisfying approach, because it does not adequately explain the apparent inconsistency between Hamblen and Klokoc.
My discomfort is only increased by the fact that there is a serious split of authority whether Faretta applies during appeals. See Michael C. Krikava & Charlann E. Winking, The Right of an Indigent Criminal Defendant to Proceed Pro Se on Appeal: By Statute or Constitution, a Necessary Evil, 15 Wm. Mitchell L.Rev. 103 (1989). In Klokoc, we attempted to satisfy any possible application of Faretta by authorizing an appealing capital defendant to file a pro se brief expressing personal views apart from counsel's. Other state courts have adopted similar procedures, e.g., Hathorn v. State, 848 S.W.2d 101 (Tex. Crim. App.), cert. denied, ___ U.S. ___, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993), though even some of these seem to regard the procedure as questionable if the defendant and appellate counsel are in material disagreement. Id. at 123-24. Some other courts, however, seem to have concluded that Faretta applies fully on appeal. Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir.1984), cert. denied, 470 U.S. 1008, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985).
Still other Courts have found that the equivalent of Faretta rights exists by way of statute or court rule. E.g., State v. Seifert, 423 N.W.2d 368 (Minn. 1988). I find this last category of cases all the more relevant, because Florida has a Rule of Appellate Procedure that seems to speak to this precise issue:
The attorney of record for a defendant in a criminal proceeding shall not be relieved of any professional duties, or be permitted to withdraw as counsel of record, except with approval of the lower tribunal on good cause shown on written motion, until after
(A) the following have been completed:
....
(v) Substitute counsel has been obtained or appointed, or a statement has been filed with the appellate court that the appellant has exercised the right to self-representation.

Fla.R.App.P. Rule 9.140(b)(3) (emphasis added). Florida courts clearly have applied this rule as though it extended a Faretta-type right to criminal appeals. Blanton v. State, 561 So.2d 587 (Fla. 2d DCA 1989).
Our analysis of these cases is at best criticizable. There could be a variety of solutions, but all are problematic. One would be to recede from Klokoc, which would result in appeals such as Mr. Farr's becoming perfunctory affirmances. This clearly would increase the proportionality problem but would more fully honor rule 9.140(b)(3). Another would be to adopt Justice Barkett's approach in Hamblen, which would increase the restriction on the defendant's right of self-determination yet would more fully satisfy the proportionality doctrine. Yet the latter approach would not fully honor rule 9.140(b)(3). Part of the problem could be eliminated simply by requiring a presentence investigation in every case in which death is imposed, including those in which a defendant does not seriously challenge imposition of the death penalty. I would so order. On this point, I dissent from the majority.
A time is coming when this Court must comprehensively address the problem of defendants who seek the death penalty, whose numbers are growing. We have reached the stage at which our holdings are not entirely consistent with each other or with our own rules of court. Case-by-case adjudication of a larger problem certainly has its place, but not when the result is a confounding of the overall law: a point we are rapidly reaching.
I personally would favor referring the entire matter to one of The Florida Bar's standing rules committees or to a committee or Court commission created especially to investigate this problem. This Court has inherent authority to promulgate rules of procedure, which could include a new procedural framework for dealing with defendants who favor their own executions. Our piecemeal approach to cases like Farr's has not adequately addressed all the problems at *453 hand, and I believe the time is approaching for a comprehensive study and the development of one or more proposals for reform, with adequate input from all segments of the public and the Bar. I therefore would refer this issue to the Criminal Procedure Rules Committee of The Florida Bar for more intensive study and formulation of a recommendation to the Court.
ANSTEAD, J., concurs.
NOTES
[1] Counsel has raised two other arguments that are procedurally barred, because they were considered and rejected in the previous direct appeal. These are: (1) that the Court should recede from Hamblen v. State, 527 So.2d 800 (Fla. 1988); and (2) that the trial court improperly found aggravating factors.